IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GEORGE SHEPARD, | 4:16CV3038 |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| STATE OF NEBRASKA, NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, HAROLD CLARKE, ROBERT HOUSTON, MIKE KENNEY, and SCOTT FRAKES, in their official and individual capacities, | |
| Defendants. | |

Plaintiff, George Shepard ("Shepard"), filed this case on March 17, 2016. He has been granted leave to proceed in forma pauperis. The court now conducts an initial review of Shepard's complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Shepard alleges that on July 11, 1990, he was sentenced to a term of 41 to 50 years imprisonment in the Nebraska Department of Corrections for first degree sexual assault on a child and manufacturing child pornography; that the sentencing court made a finding that Shepard was not a mentally disordered sex offender, or that even if he were, he was not treatable[1]; that on July 20, 1990, Shepard entered the Diagnostic

---

[1] "Prior to 1992, Nebraska defined a 'mentally disordered sex offender' as 'any person who has a mental disorder and who, because of the mental disorder, has been determined to be disposed to repeated commission of sexual offenses which are likely to cause substantial injury to the health of others.' If an offender met this definition at the time of sentencing and it was determined that the

and Evaluation Center; that in October 1990, Shepard was transferred to the Lincoln Correctional Center ("LCC"), where he was sexually assaulted; that after informing staff of the assault, Shepard was placed in protective custody for 60 days, during which time he was in "locked down" 23 hours a day and harassed by staff; that in January 1991, Shepard was transferred back to LCC Unit A; that 6 months later, Shepard was transferred to LCC Unit C, where a cell mate sexually harassed him daily; that Shepard asked to be moved, but nothing was done for 6-9 months, during which time he was sexually assaulted by the cell mate; that Shepard was also physically assaulted several times over the next 2 years before being transferred to the Nebraska State Penitentiary ("NSP") in April 1994; that while at NSP, Shepard was placed in solitary confinement for 9 months for possessing a weapon that another inmate later admitted had been planted; that after being released from solitary confinement, Shepard was transferred to Unit 8A, where he was robbed; that in January 2002, Shepard was transferred to the Tecumseh State Correctional Institution, where he was placed in cell with a mentally ill person who tried to commit suicide; that in February 2004, Shepard was moved to the Omaha Correctional Center ("OCC"), where he shared cells with several mentally persons and was sexually harassed, assaulted in 2006, and robbed in 2015; that a psychologist who evaluated Shepard in April 2015 concluded that Shepard is a dangerous sex offender,[2] with a diagnosis of pedophilia and personality disorders, and recommended that he receive inpatient treatment after being released from incarceration; and that after Shepard was

---

disorder was treatable, the offender was immediately committed to a regional center for treatment before serving a sentence of incarceration. After receiving the maximum benefit of treatment, the offender was returned for further disposition by the sentencing court, with credit given for time spent in treatment." *In re Interest of D.H.*, 797 N.W.2d 263, 269-70 (Neb. 2011) (footnotes omitted).

[2] As used in Nebraska's Sex Offender Commitment Act, a "dangerous sex offender" is "(a) a person who suffers from a mental illness which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of one or more sex offenses, and who is substantially unable to control his or her criminal behavior or (b) a person with a personality disorder which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of two or more sex offenses, and who is substantially unable to control his or her criminal behavior." Neb. Rev. Stat. § 83–174.01(1).

discharged from OCC on May 4, 2015, having completed serving his sentence, he was involuntarily committed to the Norfolk Regional Center, where he is currently being held (Filing No. 1 at CM/ECF pp. 1-5).

Named as Defendants are the State of Nebraska, the Nebraska Department of Correctional Services ("DCS"), and the current and three former Directors of the DCS, who are sued in their official and individual capacities. Shepard "claims that he has been injured by the Defendants, due to their deliberate indifference by failing to maintain a safe environment for purposes of rehabilitation; that the Defendants derelict[ion] of duties violated [his] constitutional and civil rights of cruel and unusual punishment in how [he] was treated and the environment where he was forced to survive in by the Defendants caused [his] mental illness" (*id.* at CM/ECF p. 5). He seeks to recover money damages from the individual defendants and to require the Department of Corrections and the State of Nebraska to pay for his treatment at the Norfolk Regional Center (*id.* at CM/ECF pp. 5-6).

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party

-3-

'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. ANALYSIS

Liberally construed, Shepard's complaint alleges an Eighth Amendment claim for defendants' failure to protect his safety during incarceration. Such a claim is comprised of two elements. First, Shepard "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, Shepard must establish that the defendant prison officials recklessly disregarded that risk. *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). In other words, the prison official must have been deliberately indifferent to Shepard's safety. *Farmer*, 511 U.S. at 834.

No facts are alleged to show that any of the defendant DCS Directors had any knowledge concerning the conditions about which Shepard complains. "Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." *Spruce v. Sargent*, 149 F.3d 783, 785 (8th Cir. 1998). "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995).

Also, Shepard is complaining about a series of unrelated injuries that allegedly occurred over a period of 25 years at four different correctional facilities. Although the statute of limitations is affirmative defense, a district court may properly dismiss an in forma pauperis complaint before service when it is apparent from face of complaint that statute of limitations has run." *Myers v. Vogal,* 960 F.2d 750, 751 (8th Cir.1992).

The statute of limitations for 42 U.S.C. § 1983 actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato,* 549 U .S. 384, 387 (2007). In Nebraska, § 1983 actions are limited by a four-year statute of limitations. *See Montin v. Estate of Johnson,* 636 F.3d 409, 412-13 (8th Cir. 2011); Neb. Rev. Stat. § 25-207. Although state law establishes the statute of limitations for § 1983 actions, federal law controls on the issue of when the statute of limitations begins to run. *Wallace,* 549 U.S. at 388; *Montin,* 636 F.3d at 413. The standard rule is that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. *Wallace,* 549 U.S. at 388. Under that rule, the tort cause of action accrues, and the statute of limitations commences to run, when the plaintiff knew or should have known of the injury that forms the basis of the claim. *Id.* at 391.

Accrual can be delayed under the "continuing violations" theory, *see Montin*, 636 F.3d at 416, but the doctrine applies only to claims "composed of a series of separate acts that collectively constitute one unlawful practice." *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015) (alteration and internal quotation marks omitted). "To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy of deliberate indifference to his or her serious medical needs [or safety] and some non-time-barred acts taken in the furtherance of that policy.'" *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (quoting *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir. 1999) (alteration omitted)). Shepard's pleading does not meet this standard.

In any event, Shepard's claim that the defendants have caused him to become mentally ill is not plausible. The mere fact that Shepard was not adjudicated as a treatable mentally disordered sex offender in 1990 does not establish that his involuntary commitment to the Norfolk Regional Center in 2015 resulted from the conditions of his confinement in prison. For one thing, "Nebraska's former MDSO [mentally disordered sex offender] statutes and its current SOCA [Sex Offender commitment Act] statutes provide for assessment of an offender's mental health and risk of recidivism at different times and for different purposes." *In re Interest of D.H., 797 N.W.2d at 271*. "Although the SOCA has several aims, ... its primary purpose is to protect the public from sex offenders who continue to pose a threat" after completing their sentences. *D.I. v. Gibson*, 867 N.W.2d 284, 289 (Neb. 2015) (internal quotation marks and footnote omitted).

The psychologist who evaluated Shepard in 1990 concluded that Shepard had mental disorders but would not benefit from treatment prior to incarceration because, despite his two convictions for sexual assault on a child, he denied being sexually attracted to children. The report of the psychological evaluation stated:

> Current diagnoses offered for George L. Shepard include Antisocial Personality Disorder (301.70) and Narcissistic Personality Disorder (301.81). Mr. Shepard has a long standing history of irresponsible and antisocial behavior.... In combination, these two personality disorders result in a very exploitive and often dangerous characterlogical style.
>
> Even though this is Mr. Shepard's second conviction for sexual assault of a child, he continues to deny fantasies or sexual attraction to children. This would make any type of treatment in this case near to impossible. It may well have been in this case that his primary motivation was monitory [*sic*], e.g. to sell the child pornography, which would be consistent with his personality disorders.

> I do not find George L. Shepard to be a mentally disordered sex offender who would benefit from available treatment in Nebraska for sex offenders.

(Filing No. 1 at CM/ECF p. 11).

By comparison, the psychologist who evaluated Shepard in 2015 concluded that, in addition to having personality disorders, Shepard is a pedophile who is at risk to reoffend and therefore presents a danger to the community. The report of the psychological evaluation stated:

> ... [Shepard] meets the DSM-IV criteria for an Axis I diagnosis of Pedophilia, Sexually Attracted to Females, Non-Exclusive Type and an Axis II diagnosis of Personality Disorder, NOS with Antisocial and Narcissistic Traits.... The diagnosis of Pedophilia is associated with increased risk to commit acts of sexual violence; which is underscored in this case by Mr. Shepard's history of repeated contact with the legal system for sexual assault convictions and allegations. His diagnosis of Personality Disorder, NOS with Antisocial and Narcissistic Traits makes him more likely to commit further acts of sexual violence ....
>
> Findings of the actuarial measures of which Mr. Shepard was rated suggest he is at moderate risk to reoffend.... It is further noted Mr. Shepard poses a substantial risk of harm to minor females in the event that he were to reoffend.
>
> ...
>
> It is my clinical opinion that George L. Shepard is in need of sex offense specific treatment in order to gain insight into his sexually assaultive behavior and acquire the knowledge and skills to mitigate his risk to sexually reoffend. It is further my opinion that he is in need of treatment in an inpatient setting based on both his treatment needs and the safety needs of the community. An inpatient commitment to Health [and] Human Services is recommended.

(Filing No. 1 at CM/ECF p. 16).

In short, Shepard's mental disorders cannot reasonably be attributed to prison conditions. By all indications, he was already a dangerous sex offender when he was sentenced to prison in 1990.

### IV. CONCLUSION

Shepard's complaint fails to state a claim upon which relief can be granted. He will not be allowed to file an amended complaint because the court has concluded that to do so would be futile.

IT IS THEREFORE ORDERED that the case is dismissed without prejudice. The court will enter judgment by a separate document.

DATED this 3rd day of May, 2016.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge